**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN V. FERRIS and JOANN M. FERRIS, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| vs. | JURY TRIAL DEMANDED |
| WYNN RESORTS LIMITED, STEPHEN A. WYNN, CRAIG SCOTT BILLINGS, STEPHEN COOTEY, and MATTHEW O. MADDOX, | |
| Defendants | |

Plaintiffs John V. Ferris and JoAnn M. Ferris (collectively, "Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Wynn Resorts Limited ("Wynn Resorts" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Wynn Resorts' securities between February 28, 2014 and January 25, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.    Wynn Resorts owns and operates luxury hotels and destination casino resorts. The Company owns and operates Wynn Las Vegas and Encore in Las Vegas, Nevada, and Wynn Macau and Wynn Palace in Macau, China, and it is currently constructing a new $2.4 billion property called Wynn Boston Harbor in Everett, Massachusetts.

3.    Founded in 2002 by Stephen Wynn, the Company is based in Las Vegas, Nevada, and its stock trades on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "WYNN".

4.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company's founder and Chief Executive Officer ("CEO"), Stephen (Steve) A. Wynn had engaged in a pattern of sexual misconduct with respect to Wynn Resorts employees, including instances of sexual assault; (ii) discovery of the foregoing misconduct would subject the Company to heightened regulatory scrutiny and jeopardize Wynn's tenure at the Company; and (iii) as a result of the foregoing, Wynn Resorts' shares traded at artificially inflated prices during the Class Period, and class members suffered significant losses and damages.

5.     On January 26, 2018, *The Wall Street Journal* published an article titled "Dozens of People Recount Pattern of Sexual Misconduct by Las Vegas Mogul Steve Wynn," revealing detailed accounts that Wynn had coerced and pressured several Wynn Resorts employees to perform sex acts.  According to the *Wall Street Journal*, "dozens of people… who have worked at Mr. Wynn's casinos told of behavior that cumulatively would amount to a decades-long pattern of sexual misconduct by Mr. Wynn."  It was further revealed that Wynn had paid a Wynn Resorts employee $7.5 million after being accused of forcing the employee to have sex with him. Following these revelations, the Massachusetts Gaming Commission announced that it would open a regulatory review into the Company over the sexual misconduct allegations reported in the *Wall Street Journal* article.

6.     On this news, Wynn Resorts' share price fell $20.31, or 10.12%, to close at $180.29 on January 26, 2018.

7.     On that same day, the Board of Directors of Wynn Resorts announced the formation of a Special Committee of the Board comprised solely of independent directors to investigate the allegations contained in the *Wall Street Journal* article.

8.     On February 6, 2018, the Company issued a press release entitled "Wynn Resorts CEO Steps Down," announcing the immediate resignation of Wynn as the Company's CEO and Chairman of the Board of Directors.

9.     On February 13, 2018, post-market, media outlets reported that two women had filed new sexual misconduct reports concerning Wynn with the Las Vegas Metropolitan Police Department, alleging that Wynn had sexually assaulted them in the 1970s.  One woman reported that Wynn assaulted her in Las Vegas and the other said she was assaulted in Chicago, the Las Vegas Metropolitan Police Department said in a statement.

10.     On this news, Wynn Resorts' share price closed at \$164.16 on February 14, 2018, a decline of \$36.44, or 18.16%, from the January 25, 2018 closing price.

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

14.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). Wynn Resorts' common stock trades on the NASDAQ, located within this Judicial District.

15.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

16.     Plaintiffs, as set forth in the attached Certification, acquired Wynn Resorts securities at artificially inflated prices during the Class Period and were damaged upon the revelation of the alleged corrective disclosures.

17.    Defendant Wynn Resorts is headquartered in Nevada, with principal executive offices located at 3131 Las Vegas Boulevard South, Las Vegas, Nevada 89109.  Wynn Resorts' securities trade on the NASDAQ under the ticker symbol "WYNN".

18.    Defendant Stephen (Steve) A. Wynn ("Wynn") served as the Company's CEO and Chairman from June 2002 until his resignation on February 6, 2018.

19.    Defendant Craig S. Bilings ("Bilings") has served as the Company's Chief Financial Officer ("CFO"), Principal Accounting Officer and Treasurer since March 2017.

20.    Defendant Stephen Cootey ("Cootey") served as the Company's CFO and Senior Vice President from March 2014 to March 2017.

21.    Defendant Matthew O. Maddox ("Maddox") served as the Company's CFO and Principal Accounting Officer from March 2006 to May 2014, and has served as the Company's CEO since February 2018.

22.    The Defendants referenced above in ¶¶ 18-21 are sometimes referred to herein as the "Individual Defendants."

23.    The Individual Defendants possessed the power and authority to control the contents of Wynn Resorts' SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations

being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

## Background

24.     Wynn Resorts Limited owns and operates luxury hotels and destination casino resorts. The Company owns and operates Wynn Las Vegas and Encore in Las Vegas, Nevada, and Wynn Macau and Wynn Palace in Macau, China, and it is currently constructing a new $2.4 billion property called Wynn Boston Harbor in Everett, Massachusetts.

## Materially False and Misleading Statements Issued During the Class Period

25.     The Class Period begins on February 28, 2014, when Wynn Resorts filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2013 (the "2013 10-K").   In the 2013 10-K, the Company stated in part:

> As part of the Company's commitment to integrity, the Board of Directors has adopted a Code of Business Conduct and Ethics applicable to all directors, officers and employees of the Company and its subsidiaries. This Code is periodically reviewed by the Board of Directors. In the event we determine to amend or waive certain provisions of this code of ethics, we intend to disclose such amendments or waivers on our website at http://www.wynnresorts.com under the heading "Corporate Governance" within four business days following such amendment or waiver or as otherwise required by the NASDAQ listing standards.

26.     Wynn Resorts' Code of Business Conduct and Ethics (amended as of August 1, 2016) states, in part:

> All of us at Wynn Resorts are focused on our commitment to providing an elegant environment, high-quality amenities, a superior level of service and distinctive attractions for our customers. However, our ability to conduct our business and sustain the respect of the investment community and the people who regulate our industry rests first and foremost on our commitment to integrity.

***

Our business depends on the reputation of all of us for integrity and principled business conduct. The purpose of this Code of Business Conduct and Ethics (the "Code") is to reinforce and enhance the commitment of Wynn Resorts, Limited (together with its affiliates, the "Company") to an ethical way of doing business. ***The Code applies to all employees, officers, directors, agents, and representatives of the Company and its affiliates*** ("Covered Persons" or "you"). This Code also applies to certain independent contractors and consultants who work at the Company's facilities or on the Company's behalf, in which case those persons will be notified and provided a copy of this Code and will be deemed a Covered Person. The policies set forth here are the basis for the Company to continue a tradition of high ethical business standards. ***The Company has additional policies that supplement the policies in this Code.***

***

***All reported violations of the Code will be taken seriously and promptly investigated.*** All reports will be treated confidentially to the extent reasonably possible. It is the Company's policy that no one will be subject to retaliation or adverse employment action because of a good faith report of suspected misconduct or for assisting in any investigation of suspected misconduct. It is imperative that reporting persons not conduct their own preliminary investigations. Investigations of alleged violations may involve complex legal issues, and acting on your own may compromise the integrity of an investigation and adversely affect both you and the Company. . . .

***The Company intends to use every reasonable effort to prevent the occurrence of conduct not in compliance with the Code and to halt any such conduct that may occur as soon as reasonably possible after its discovery.*** Subject to applicable law and agreements, Covered Persons who violate this Code and other Company policies and procedures may be subject to disciplinary action, up to and including discharge.

(Emphases added.)

27.     The 2013 10-K contained signed certifications pursuant to the Sarbanes Oxley Act of 2002 ("SOX") by Defendants Wynn and Maddox, stating that the information contained in the 2013 10-K "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

28.     On May 9, 2014, Wynn Resorts filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31,

2014 (the "Q1 10-Q 2014").  The Q1 10-Q 2014 contained signed certifications pursuant to SOX by Defendants Wynn and Maddox, stating that the information contained in the Q1 10-Q 2014 "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

29.     On August 8, 2014, Wynn Resorts filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2014 (the "Q2 10-Q 2014").  The Q2 10-Q 2014 contained signed certifications pursuant to SOX by Defendants Wynn and Cootey, stating that the information contained in the Q2 10-Q 2014 "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

30.     On November 7, 2014, Wynn Resorts filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2014 (the "Q3 10-Q 2014").  The Q3 10-Q 2014 contained signed certifications pursuant to SOX by Defendants Wynn and Cootey, stating that the information contained in the Q3 10-Q 2014 "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

31.     On March 2, 2015, Wynn Resorts filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2014 (the "2014 10-K").  In the 2014 10-K, the Company stated in part:

> As part of the Company's commitment to integrity, the Board of Directors has adopted a Code of Business Conduct and Ethics applicable to all directors, officers and employees of the Company and its subsidiaries. This Code is periodically reviewed by the Board of Directors. In the event we determine to amend or waive certain provisions of this code of ethics, we intend to disclose such amendments or waivers on our website at http://www.wynnresorts.com under the heading "Corporate Governance" within four business days following

such amendment or waiver or as otherwise required by the NASDAQ listing standards.

32.     Upon information and belief, Wynn Resorts' Code of Business Conduct and Ethics contained the representations described supra at ¶ 26.

33.     The 2014 10-K contained signed certifications pursuant to SOX by Defendants Wynn and Cootey, stating that the information contained in the 2014 10-K "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

34.     On May 8, 2015, Wynn Resorts filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q1 10-Q 2015"). The Q1 10-Q 2015 contained signed certifications pursuant to SOX by Defendants Wynn and Cootey, stating that the information contained in the Q1 10-Q 2015 "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

35.     On August 7, 2015, Wynn Resorts filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 10-Q 2015"). The Q2 10-Q 2015 contained signed certifications pursuant to SOX by Defendants Wynn and Cootey, stating that the information contained in the Q2 10-Q 2015 "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

36.     On November 6, 2015, Wynn Resorts filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2015 (the "Q3 10-Q 2015"). The Q3 10-Q 2015 contained signed certifications pursuant to SOX by Defendants Wynn and Cootey, stating that the information contained in the

Q3 10-Q 2015 "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

37.     On February 29, 2016, Wynn Resorts filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2015 (the "2015 10-K").  In the 2015 10-K, the Company stated in part:

> As part of the Company's commitment to integrity, the Board of Directors has adopted a Code of Business Conduct and Ethics applicable to all directors, officers and employees of the Company and its subsidiaries. This Code is periodically reviewed by the Board of Directors. In the event we determine to amend or waive certain provisions of this code of ethics, we intend to disclose such amendments or waivers on our website at http://www.wynnresorts.com under the heading "Corporate Governance" within four business days following such amendment or waiver or as otherwise required by the NASDAQ listing standards.

38.     Upon information and belief, Wynn Resorts' Code of Business Conduct and Ethics contained the representations described supra at ¶ 26.

39.     The 2015 10-K contained signed certifications pursuant to SOX by Defendants Wynn and Cootey, stating that the information contained in the 2015 10-K "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

40.     On May 6, 2016, Wynn Resorts filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 10-Q 2016").  The Q1 10-Q 2016 contained signed certifications pursuant to SOX by Defendants Wynn and Cootey, stating that the information contained in the Q1 10-Q 2016 "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

41.     On August 9, 2016, Wynn Resorts filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 10-Q 2016").  The Q2 10-Q 2016 contained signed certifications pursuant to SOX by Defendants Wynn and Cootey, stating that the information contained in the Q2 10-Q 2016 "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

42.     On November 4, 2016, Wynn Resorts filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q3 10-Q 2016").  The Q3 10-Q 2016 contained signed certifications pursuant to SOX by Defendants Wynn and Cootey, stating that the information contained in the Q3 10-Q 2016 "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

43.     On February 24, 2017, when Wynn Resorts filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended December 31, 2016 (the "2016 10-K").  In the 2016 10-K, the Company stated in part:

> As part of the Company's commitment to integrity, the Board of Directors has adopted a Code of Business Conduct and Ethics applicable to all directors, officers and employees of the Company and its subsidiaries. This Code is periodically reviewed by the Board of Directors. In the event we determine to amend or waive certain provisions of this code of ethics, we intend to disclose such amendments or waivers on our website at http://www.wynnresorts.com under the heading "Corporate Governance" within four business days following such amendment or waiver or as otherwise required by the NASDAQ listing standards.

44.     Upon information and belief, Wynn Resorts' Code of Business Conduct and Ethics contained the representations described supra at ¶ 26.

45.    The 2016 10-K contained signed certifications pursuant to the SOX by Defendants Wynn and Cootey, stating that the information contained in the 2016 10-K "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

46.    On May 4, 2017, Wynn Resorts filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 10-Q 2017").  The Q1 10-Q 2017 contained signed certifications pursuant to SOX by Defendants Wynn and Billings, stating that the information contained in the Q1 10-Q 2017 "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

47.    On August 4, 2017, Wynn Resorts filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2017 (the "Q2 10-Q 2017").  The Q2 10-Q 2017 contained signed certifications pursuant to SOX by Defendants Wynn and Billings, stating that the information contained in the Q2 10-Q 2017 "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

48.    On November 8, 2017, Wynn Resorts filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2017 (the "Q3 10-Q 2017").  The Q3 10-Q 2017 contained signed certifications pursuant to SOX by Defendants Wynn and Billings, stating that the information contained in the Q3 10-Q 2017 "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

49.     The statements referenced in ¶¶ 25-48 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company's founder and CEO, Stephen A. Wynn had engaged in a pattern of sexual misconduct with respect to Wynn Resorts employees, including instances of sexual assault; (ii) discovery of the foregoing misconduct would subject the Company to heightened regulatory scrutiny and jeopardize Wynn's tenure at the Company; and (iii) as a result of the foregoing, Wynn Resorts' shares traded at artificially inflated prices during the Class Period, and class members suffered significant losses and damages.

## The Truth Begins to Emerge

50.     On January 26, 2018, 26, 2018, *The Wall Street Journal* published an article titled "Dozens of People Recount Pattern of Sexual Misconduct by Las Vegas Mogul Steve Wynn," revealing detailed accounts that Wynn had coerced and pressured several Wynn Resorts employees to perform sex acts.  According to the *Wall Street Journal*, "dozens of people… who have worked at Mr. Wynn's casinos told of behavior that cumulatively would amount to a decades-long pattern of sexual misconduct by Mr. Wynn."  It was further revealed that Wynn had paid a Wynn Resorts employee $7.5 million after being accused of forcing the employee to have sex with him.  The article stated, in relevant part:

> "Everybody was petrified," said Jorgen Nielsen, a former artistic director at the salon. Mr. Nielsen said he and others repeatedly told high-level company executives Mr. Wynn's sexual advances were causing a problem, but "nobody was there to help us."
>
> ***
>
> Dennis Gomes, who was an executive at the Golden Nugget in Las Vegas when Mr. Wynn was running that casino decades ago, said in a deposition in an early-

1990s lawsuit that Mr. Gomes "routinely received complaints from various department heads regarding Wynn's chronic sexual harassment of female employees," according to a court filing that summarized his testimony.

In the suit over Mr. Gomes's departure to work for a Trump casino, Mr. Gomes described what he called a "disgraceful pattern of personal and professional conduct" that he said included Mr. Wynn's directing him to get the home phone numbers of casino cocktail waitresses.

51.     Following these revelations, the Massachusetts Gaming Commission announced that it would open a regulatory review into the Company over the sexual misconduct allegations reported in the *Wall Street Journal* article.

52.     On this news, Wynn Resorts' share price fell $20.31, or 10.12%, to close at $180.29 on January 26, 2018.

53.     On that same day, the Board of Directors of Wynn Resorts announced the formation of a Special Committee of the Board comprised solely of independent directors to investigate the allegations contained in the *Wall Street Journal* article.

54.     On February 6, 2018, the Company issued a press release entitled "Wynn Resorts CEO Steps Down," announcing the immediate resignation of Wynn as the Company's CEO and Chairman of the Board of Directors.

55.     On February 13, 2018, post-market, media outlets reported that two women had filed new sexual misconduct reports concerning Wynn with the Las Vegas Metropolitan Police Department, alleging that Wynn had sexually assaulted them in the 1970s. One woman reported that Wynn assaulted her in Las Vegas and the other said she was assaulted in Chicago, the Las Vegas Metropolitan Police Department said in a statement.

56.     On this news, Wynn Resorts' share price closed at $164.16 on February 14, 2018, a drop of $36.44, or 18.16% from the January 25, 2018 closing price.

57.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Wynn Resorts securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

59.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Wynn Resorts securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Wynn Resorts or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

60.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

61.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

62.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Wynn Resorts;

- whether the Individual Defendants caused Wynn Resorts to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Wynn Resorts securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

63.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

64.     Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Wynn Resorts securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiffs and members of the Class purchased, acquired and/or sold Wynn Resorts securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

65.    Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

66.    Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

67.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

68.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

69.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Wynn Resorts securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire Wynn Resorts securities and options at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

70.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Wynn Resorts securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Wynn Resorts' finances and business prospects.

71.      By virtue of their positions at Wynn Resorts , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative,

Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

72.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Wynn Resorts, the Individual Defendants had knowledge of the details of Wynn Resorts' internal affairs.

73.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Wynn Resorts. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Wynn Resorts' businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Wynn Resorts securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Wynn Resorts' business and financial condition which were concealed by Defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired Wynn Resorts securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

74.     During the Class Period, Wynn Resorts securities were traded on an active and efficient market.  Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Wynn Resorts securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Wynn Resorts securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class.  The market price of Wynn Resorts securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

75.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

76.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

77.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78.     During the Class Period, the Individual Defendants participated in the operation and management of Wynn Resorts, and conducted and participated, directly and indirectly, in the conduct of Wynn Resorts' business affairs.  Because of their senior positions, they knew the adverse non-public information about Wynn Resorts' misstatement of income and expenses and false financial statements.

79.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Wynn Resorts' financial condition and results of operations, and to correct promptly any public statements issued by Wynn Resorts which had become materially false or misleading.

80.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Wynn Resorts disseminated in the marketplace during the Class Period concerning Wynn Resorts' results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Wynn Resorts to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Wynn Resorts within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Wynn Resorts securities.

81.     Each of the Individual Defendants, therefore, acted as a controlling person of Wynn Resorts.  By reason of their senior management positions and/or being directors of Wynn Resorts, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Wynn Resorts to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Wynn

Resorts and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

82.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Wynn Resorts.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives;

B.     Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

Dated: February 20, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
          ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiffs*